IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
NO: 3:03CR229

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> Plaintiff ) <br> ) <br> vs. ) <br> ) <br> BREON MONTREZ MASSEY, ) <br> Defendant. ) <br> ) <br> _____ ) | **MEMORANDUM AND** <br> **RECOMMENDATION** |

**THIS MATTER IS BEFORE THE COURT** on the "Defendant's Motion to Suppress and Exclude Wrongfully Offered Evidence" ("Motion to Suppress") (Document No. 17) and the "Defendant's Memorandum of Law Filed in Support of Defendant's Motion ..." (Document No. 16), both filed February 3, 2005 by Breon Massey; and the "Government's Response to Motion to Suppress" (Document No. 32), filed May 17, 2005. An evidentiary hearing was conducted before the undersigned on June 6, 2005 and continued on June 8, 2005. The Motion to Suppress is now ripe for disposition.

## I. PROCEDURAL AND FACTUAL BACKGROUND

In the Motion to Suppress, Mr. Massey contends that the vehicle stop on February 10, 2003 was unlawful because it was made without "probable cause or reasonable suspicion"; that the responding officer exceeded the scope of the traffic stop; and that the search revealing the drugs and handgun was unlawful. Based upon the evidence presented at the hearings, the undersigned makes the following findings of fact.

On February 10, 2003 at approximately 12:40 a.m., Officer C.J. Rush of the Charlotte-

1

Mecklenburg Police Department was patrolling in the David 2 police district near Statesville Avenue when he saw a blue 2003 Suzuki Aerio (the "Vehicle"). Officer Rush suspected the Vehicle was speeding and "paced" the Vehicle for three-tenths of a mile, keeping an equal distance between his car and the Vehicle to ascertain the Vehicle's speed. The pacing revealed that the Vehicle was traveling at a rate of forty-six miles per hour in the thirty-five mile per hour zone. Officer Rush initiated a traffic stop at the 1100 block of Statesville Avenue. The entire traffic stop was recorded by Officer Rush's onboard video camera.[1]

After the Vehicle stopped, Officer Rush noticed there were four occupants in the Vehicle. Mr. Massey was sitting in the right rear passenger seat. Officer Rush approached the driver, Tony Robinson, and asked Mr. Robinson for his license and registration. Mr. Robinson provided Officer Rush with his license and a rental car agreement. Upon receiving the license and rental car agreement, Officer Rush looked at the agreement to see if Mr. Robinson was an authorized driver of the rental car. Officer Rush did not inform Mr. Robinson why Officer Rush had stopped the Vehicle, but instead advised Mr. Robinson of the common policy of rental car companies to require authorization for all drivers. Mr. Robinson told Officer Rush that his aunt gave him permission to drive the Vehicle, which was rented in her name. Mr. Robinson offered to call his aunt for confirmation. Officer Rush and Mr. Robinson then walked to a spot near Officer Rush's patrol car to call Mr. Robinson's aunt.

While waiting with Mr. Robinson, Officer Rush witnessed Mr. Massey turn around several times from his position in the right rear passenger seat. Officer Rush stated that the other passengers

---

[1] Officer Blee, a responding officer, also had an onboard video camera which recorded the events. The Court relied on Officer Blee's audio recording because Officer Rush's equipment malfunctioned and failed to record sound.

maintained a forward-facing position and that Mr. Massey's turning around made him nervous. To Officer Rush, it appeared that Mr. Massey was attempting to locate Officer Rush's position. Officer Rush placed Mr. Robinson in the backseat of his patrol car and approached the Vehicle, accompanied by two newly arrived officers, Officers Parker and Blee.

After approaching the Vehicle, Officer Rush asked Mr. Massey to roll down his window so that Officer Rush could talk with Mr. Massey. Mr. Massey complied, and as Mr. Massey rolled down the window, Officer Rush smelled marijuana. Mr. Massey told Officer Rush that his name was Chris. Officer Rush asked all the passengers who was smoking the marijuana, and they all denied responsibility. All passengers also denied that there were any drugs or weapons present in the Vehicle. Officer Rush next moved to the front passenger seat to talk to a different passenger. As Officer Rush stepped forward, he noticed a bottle of liquor between Mr. Massey's legs. After speaking briefly with the front seat passenger, Officer Rush noticed that Mr. Massey's left hand was on the outside of Mr. Massey's left thigh, out of Officer Rush's view. Officer Rush asked Mr. Massey to move his hands where Officer Rush could see them. As Mr. Massey moved his hands, Officer Rush heard an object hit the floor.

Officer Rush went back to Mr. Massey in an attempt to get him out of the Vehicle. Officer Rush grabbed Mr. Massey's arm and turned Mr. Massey around to face out of the car. Mr. Massey began pushing against Officer Rush's hand in an attempt to stand up. Officer Rush repeatedly warned Mr. Massey, saying, "Don't push up against me Chris .... don't fight me." As Officer Rush attempted to prevent Mr. Massey from standing, Officer Rush called for additional units on his radio. Additional officers joined Officers Rush, Parker, and Blee in an effort to handcuff Mr. Massey, who was resisting. The officers struggled with Mr. Massey for approximately two minutes in an attempt

3

to get Mr. Massey's hands behind his back. After the officers subdued Mr. Massey, they removed the other passengers from the Vehicle. A subsequent search of the Vehicle revealed marijuana and a handgun located in the floorboard near where Mr. Massey had been sitting.

Officer Cook, a responding officer, placed Mr. Massey in his patrol car. As Officer Cook performed a personal information check on Mr. Massey, Officer Cook noticed that Mr. Massey was moving around in the backseat. Officer Cook later searched the rear of the patrol car and found Mr. Massey's sock under the front seat. The sock was filled with several rocks of crack cocaine, which Officer Cook seized.

## II. LEGAL ANALYSIS AND CONCLUSIONS

### A. Whether the Vehicle Stop Was Lawful

The Fourth Circuit recently summarized the law governing the legality of a vehicle stop as follows:

> Under *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), an officer may conduct a brief investigatory stop where the officer has reasonable suspicion that criminal activity may be afoot. A *Terry* stop must be based on at least a minimal level of objective justification, but the standard for reasonable suspicion is less demanding than for probable cause. In assessing a *Terry* stop's validity, we consider the totality of the circumstances. Thus, factors which by themselves suggest only innocent conduct may amount to reasonable suspicion when taken together. Moreover, our determination of reasonable suspicion must give due weight to common sense judgments reached by officers in light of their experience and training. While we require more than a mere hunch to justify a stop, we also credit the practical experience of officers who observe on a daily basis what transpires on the street.

United States v. Perkins, 363 F.3d 317, 321 (4th Cir. 2004) (internal marks and citations omitted) (italics in original). Among the factors that the courts have considered in determining whether reasonable suspicion exists are (1) presence in a high crime area, e.g., Perkins, 363 F.2d at 321;

4

United States v. Christmas, 222 F.3d 141, 145 (4th Cir. 2000); United States v. Sprinkle, 106 F.2d 613, 617 (4th Cir. 1997); United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993); (2) evasive conduct, even if that conduct stops short of "headlong flight," Lender, 985 F.2d at 154; Sprinkle, 106 F.2d at 618; (3) informant tips, including anonymous tips if "accompanied by some corroborative elements that establish the tip's reliability," Perkins, 363 F.3d 323; (4) the lateness of the hour, Lender, 985 F. 2d at 154; (5) knowledge of prior criminal involvement, Sprinkle, 106 F.2d at 617; and (6) the observation of what appears to be a drug transaction or other criminal activity, Lender, 985 F.2d at 154.

North Carolina law requires motorists to comply with all posted speed limits. N.C. Gen. Stat. §20-141. In the Fourth Circuit, a traffic offense, "however minor," gives an officer probable cause.[2] United States v. Hassan El, 5 F.3d 726, 730 (4th Cir. 1993) (finding reasonable suspicion for stopping vehicle where officers testified that vehicle had failed to stop at stop sign). This is true even if "the officer would not have made the stop but for some hunch or inarticulable suspicion of other criminal activity." Id.

With respect to whether Officer Rush had "reasonable suspicion" to stop the Vehicle, Officer Rush suspected that the Vehicle was exceeding the posted speed limit in violation of North Carolina law and confirmed – after pacing the Vehicle – that it was traveling eleven miles per hour over the limit. The undersigned found Officer Rush to be a highly credible witness, despite a vigorous cross-examination by defense counsel, and rejects challenges to the validity of Officer Rush's testimony regarding the traffic offense. Applying Hassan El, the undersigned concludes that Officer Rush had,

---

[2] Probable cause is, of course, a higher standard than reasonable suspicion. Perkins, 363 F.3d at 321.

5

at the very least, reasonable suspicion to stop the Vehicle after witnessing the traffic offense and that the vehicle stop was lawful under Terry.

### B. Whether Officer Rush Exceeded the Scope of the Terry Stop

Having determined that the vehicle stop was lawful, the second part of the inquiry under Terry is to determine whether the officer's subsequent conduct was "reasonably related in scope to the circumstances which justified the interference in the first place." United States v. Meikle, 407 F.3d 670, 672 (4th Cir. 2005) (internal quotation omitted). During a routine traffic stop, the officer's conduct is limited to requesting a driver's license and vehicle registration, running a computer check, and issuing a citation. United States v. Foreman, 369 F.3d 776, 781 (4th Cir. 2004). An officer may also lawfully order the driver out of the vehicle as part of a routine traffic stop. Ohio v. Robinette, 519 U.S. 33, 38-39 (1996). Any further investigation is illegal, unless the officer has "reasonable suspicion of other criminal activity." Foreman, 369 F.3d at 781.

Mr. Massey contends first that Officer Rush exceeded the scope of the Terry stop in Officer Rush's questioning of Mr. Robinson. Second, Mr. Massey contends that Officer Rush exceeded the scope of the Terry stop by questioning Mr. Massey and attempting to remove Mr. Massey from the vehicle.

Regarding Mr. Massey's first contention, the Court found as fact that Officer Rush asked Mr. Robinson for his license and registration; that when Mr. Robinson failed to demonstrate that he was an authorized driver of the rental car, Officer Rush asked Mr. Robinson to get out of the car; and that Officer Rush accompanied Mr. Robinson to the front of his patrol car to call Mr. Robinson's aunt, who Mr. Robinson claimed gave him permission to drive the rental car. The undersigned concludes that Officer Rush did not exceed the scope of the Terry stop by asking Mr. Robinson to exit the

Vehicle or in attempting to ascertain whether or not Mr. Robinson was an authorized driver of the rental car. See United States. v. Brigham, 382 F.3d 500, 507-08 (5th Cir. 2004) ("[T]his court has found no constitutional impediment to a law enforcement officer's request to examine ... rental papers during a traffic stop ...."); United States v. Garrido-Santana, 360 F.3d 565 (6th Cir. 2004) (holding that a computer check on a rental car's license plate to confirm that the suspect was lawfully operating the vehicle did not exceed the scope of the stop).

      Regarding Mr. Massey's second contention, the Court found as fact that Officer Rush became nervous when Mr. Massey turned around several times while Officer Rush was waiting with Mr. Robinson; that Officer Rush then approached the car and requested that Mr. Massey roll down his window; that Officer Rush noticed the smell of marijuana after Mr. Massey rolled down the window; and that Officer Rush noticed an open bottle of liquor between Mr. Massey's legs. The undersigned finds that Officer Rush's inquiry as to the presence of marijuana and other drugs or weapons was based on either reasonable suspicion – arising from the smell of marijuana, the open container of liquor, and Mr. Massey's unnerving behavior – or was merely part of a consensual exchange with the passengers. See United States v. Sullivan, 138 F.3d 126, 134 (holding that a brief interrogation of the suspect following a traffic stop was not a seizure because the encounter was consensual).

      The Court notes that officer safety constitutes "both a legitimate and weighty" concern. See Maryland v. Wilson, 519 U.S. 408, 412 (1997). The undersigned believes, based on the foregoing, that when Officer Rush approached Mr. Massey and later attempted to remove Mr. Massey from the Vehicle, Officer Rush was acting in the interest of his safety. See id. at 415 (holding that because the danger to an officer from a traffic stop is greater when there are passengers, police may order passengers to get out of the car during routine stops). Mr. Massey's ultimate detention was the result

of his own actions – failing to comply with Officer Rush's instructions and resisting – and was not part of an unlawful search and seizure.

### C. Whether the Search of the Vehicle was Lawful

The final step in the Court's inquiry is to determine whether the actual subsequent search of the Vehicle was lawful. The Fourth Amendment protects persons and their belongings against unreasonable searches and seizures and requires that probable cause support the issuance of a warrant to search and seize. U.S. Const. amend. IV. Searches conducted without a warrant issued upon probable cause are considered "per se unreasonable" subject only to a few well-defined exceptions. United States v. Gastiaburo, 16 F.3d 582, 585-86 (4th Cir. 1994) (quoting California v. Acevedo, 500 U.S. 565, 580 (1991)). One such exception is the "automobile exception," pursuant to which

> it may be reasonable and therefore constitutional to search a movable vehicle without a warrant, even though it would be unreasonable and unconstitutional to conduct a similar search of a home, store, or other fixed piece of property.

Gastiaburo, 16 F.3d at 586 (citation omitted).

Pursuant to the "automobile exception," the police may search an automobile and any containers inside it "where they have probable cause to believe contraband or evidence is contained." Id. (quoting Acevedo, 500 U.S. at 580). That search "need not occur contemporaneously with the car's lawful seizure and ... need not be justified by the existence of exigent circumstances that might have made it impractical to secure a warrant prior to the search." Gastiaburo, 16 F.3d at 587 (citations omitted). Probable cause to search a place exists where "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983); see also Ornelas v. United States, 517 U.S. 690, 696 (1996) (Probable cause exists

8

"where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found.").

With regards to whether or not the officers had "probable cause to believe contraband or evidence" was contained in the Vehicle, the Court finds as fact that Officer Rush smelled marijuana; that Officer Rush observed an open bottle of liquor; that Officer Rush heard an object hit the floor when he asked Mr. Massey to move his hands; and that Mr. Massey engaged in a physical struggle with officers. Based on the foregoing, the undersigned concludes that the officers clearly had probable cause to believe the Vehicle contained contraband or evidence and were justified in their subsequent search.[3]

### III.  RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that the Motion to Suppress (Document No. 17) be **DENIED**.

### IV.  NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this memorandum supra I.A-C must be filed within ten (10) days after service of same. Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D. N.C. 1990). Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to de novo review by the district court, Snyder, 889 F.2d at 1365, and may

---

[3]The government also argued – perhaps correctly – that under United States v. Wellons, 32 F.3d 117 (4th Cir. 1994), the defendant as a passenger in a rented vehicle lacked standing to challenge the search. Id. at 119 (holding that an unauthorized driver's rights were not violated by a search of the rented vehicle because he did not have a legitimate privacy interest in the car).

9

preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and the Honorable Graham C. Mullen.

**Signed: June 21, 2005**

David C. Keesler
United States Magistrate Judge