IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:03CR229-MU

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| BREON MONTREZ MASSEY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

THIS MATTER IS BEFORE THE COURT on Defendant's Objections to the Magistrate's Memorandum and Recommendations concerning suppression of evidence seized on February 10, 2003. Both sides have fully briefed the issue, including supplemental briefing requested by the Court, and a hearing was held on the matter on January 23, 2006. In consideration of all the evidence presented to the Court and the relevant legal authorities, the Court will reject the Magistrate's recommendations and GRANT Defendant's Motion to Suppress.

**I. BACKGROUND**

After reviewing the record, recordings made on the scene and hearing testimony, the Court makes the following findings of fact: Around 12:40 AM on the night of February 10, 2003, Officer C.J. Rush of the Charlotte-Mecklenburg Police Department ("CMPD") was patrolling near Statesville Avenue in Charlotte when he observed a green Suzuki Aerio ("the vehicle" or "the rental car") carrying four African-American males, including the Defendant. According to Officer Rush, the vehicle made a turn from a side street onto Statesville Avenue in a manner that led him to believe it would soon be breaking the speed limit.

Officer Rush, who was a 9-11 emergency responder unequipped with speed detection

devices and untrained in speed detection beyond basic police academy instruction, deliberately in contravention of department policy decided to "pace" the vehicle to determine its speed. Pacing is a technique whereby the officer maintains a constant distance between his car and the subject car over a certain period of time and gauges the subject's speed via his speedometer. Because of the costs associated with maintaining speedometer calibration and the risk of inaccurate speeding determinations associated with uncalibrated speedometers, CMPD policy forbids officers from relying on this method as a basis for a stop.

Officer Rush, however, determined the vehicle to be speeding based solely on pacing and stopped it accordingly. He then approached the driver, Robinson, and learned that the vehicle was a rental car in Robinson's aunt's name. Though standing at the vehicle's window to talk to Robinson, Officer Rush noted no odor of marijuana at this time. He then had Robinson exit the rental car and, still unaware of any unusual odor, escorted him back to the patrol car to call his aunt concerning his authority to drive the vehicle. While Robinson was making that call, Officer Rush noticed Defendant Massey, seated in the rear passenger side of the car, turning his head occasionally to see what was going on at the police car behind him. Defendant did not appear to be positioning himself for action; he turned his head only, and made no other movements. Based on this, however, Officer Rush re-approached the car to talk to him. On approaching Defendant, according to Officer Rush, he suddenly smelled a strong odor of marijuana through the car window. This led him to investigate further, ultimately removing Defendant from the car and arresting him. A gun and some marijuana was found on the floorboard where Defendant had been sitting. After Defendant was taken to the police station, crack cocaine was found in the patrol car that had carried him.

## II- DISCUSSION

The Government argues that an unauthorized driver of a rental car has no reasonable expectation of privacy in that car, and by extension, neither do his passengers. Thus, it is claimed, Defendant lacks standing to challenge any search or seizure of that car. While it is true that passengers in a vehicle generally lack standing to challenge a search of that vehicle, passengers may challenge their own seizure; that is to say, the legality of the initial traffic stop. United States v. Rusher, 966 F.2d 868, 875 n.4 (4th Cir. 1992). The car's status as a rental car has no bearing on this point. The Court need not address the issue further, as the initial traffic stop was not justified, and therefore the evidence obtained must be excluded under the Fruit of the Poisonous Tree doctrine.

Traffic stops, even where conducted to issue a citation, are governed under the rubric of Terry v. Ohio, 392 U.S. 1 (1968). Berkemer v. McCarty, 468 U.S. 420, 439 (1984). Under Terry, an officer must be able to point to "specific and articulable facts" creating a suspicion of criminal activity that "reasonably warrant[s]" a stop. 392 U.S. at 21. A court must take the entirety of the circumstances into account when determining if the officer's suspicion was "reasonable." United States v. Cortez, 449 U.S. 411, 417-18 (1981). While the Court can only speculate as to why a 9-11 responder untrained in speed detection would decide to use a prohibited practice to stop a car full of African-American males after midnight, the officer's motivation in making the stop is unimportant; it only matters whether the basis for the stop was "objectively reasonable." See Whren v. United States, 517 U.S. 806, 813 (1996) (holding that constitutional reasonableness does not depend on an officer's subjective intent). The Court finds that it was not.

At the January 23 hearing, both sides introduced evidence before this Court concerning the existence of CMPD regulations on the pacing procedure. Defendant presented Dr. L. D. Williams, a recently retired Police Sergeant with 28 years of experience as a CMPD officer. Dr.

Williams is also a Master of Divinity and a Doctor of Ministries. Dr. Williams testified that CMPD has a strict policy against pacing as a form of speed detection, and that knowledge of and obedience to this policy are mandatory for all officers. The Government, by way of rebuttal, produced Sergeant Jeffrey Pless, a current member of CMPD Internal Affairs Bureau. Sergeant Pless testified that no such policy existed, and that in fact, there is actually a specific check-box on a traffic citation to note whether pacing was conducted. On further questioning, Sergeant Pless revised this statement to say that there was no check-box, but that officers sometimes write a letter beside the noted speed indicating that pacing was performed.

As the Government and the Defendant have introduced two witnesses making incompatible assertions of fact, and in the absence of any other evidence, the Court is called on here to make a credibility determination. As much as the Court would prefer to avoid casting any aspersions on current CMPD officers, the Court finds Dr. Williams to be by far the more credible witness. Thus, we conclude that CMPD has a mandatory policy against its officers performing traffic stops based on pacing alone.

Officer Rush asserted that he had no knowledge of any such policy against pacing. Even were Officer Rush's subjective knowledge important, to hold the stop reasonable based on this would require a favorable credibility assessment of Officer Rush which the Court is unwilling to make. Though the Magistrate found Officer Rush to be credible, the Court's own observations and analysis of his testimony showed a number of inconsistencies and questionable behaviors, perhaps most notably the remarkable enhancement in his sense of smell between talking to Robinson and Defendant Massey. The Court is therefore unwilling to rely on his testimony alone.

Because Officer Rush clearly asserted that pacing formed the only basis for the stop, the Court concludes that he stopped the rental car based solely on a procedure he was under a duty

not to perform. Essentially, by forbidding pacing as grounds for a stop, CMPD has instructed its officers that a pacing-based stop is in itself unreasonable and unacceptable. This is not the same as the argument rejected in Whren, where the petitioner asserted that a stop should be gauged by whether or not a "reasonable" officer would have conducted it. 517 U.S. at 814-16. This argument hinged on whether it would be regular police practice to perform a stop, and did not address the situation where an officer has a proactive duty not to engage in a behavior. Here, Officer Rush was not simply undertaking an activity that fell outside routine or prudent police procedure; he was actually violating a mandatory policy set forth by CMPD to prevent officers from pacing. Regardless of whether pacing would pass constitutional muster in absence of these regulations, it is objectively unreasonable for an officer to base a traffic stop on a practice in which he is forbidden to engage. Thus, Officer Rush did not have reasonable suspicion under Terry to perform the stop, and no grounds existed for Defendant to be detained.

When evidence would not have been recovered but for a constitutional violation, that evidence must be suppressed under the Fruit of the Poisonous Tree doctrine, even if that evidence was not directly discovered in the unconstitutional search. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392 (1920). It is difficult to dispute that all the evidence recovered against Massey flowed directly from the initial unconstitutional stop. Without the stop, Officer Rush would never have detained Massey, would never have seen Massey glancing back at him, would never have re-approached the car, and would never have found the evidence at issue here. As such, all evidence stemming from the unconstitutional traffic stop must be suppressed.

IT IS THEREFORE ORDERED that the Magistrate's Memorandum and Recommendations are rejected, and Defendant's Motion to Suppress is GRANTED.

Signed: April 11, 2006

Graham C. Mullen
United States District Judge