# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:03CR229-MU

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| BREON MONTREZ MASSEY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT** on Defendant's Objections to the Magistrate's Memorandum and Recommendations concerning suppression of evidence seized on February 10, 2003. Both sides have fully briefed the issue, including supplemental briefing requested by the Court, and a hearing was held on the matter on January 23, 2006. In consideration of the relevant legal authorities and the evidence presented, the Court will reject the Magistrate's recommendations and GRANT Defendant's Motion to Suppress.

### I. BACKGROUND

After reviewing the record, testimony, and recordings made on the scene, the Court makes the following findings of fact: Around 12:40 AM on the night of February 10, 2003, Officer C.J. Rush of the Charlotte-Mecklenburg Police Department ("CMPD") was patrolling near Statesville Avenue in Charlotte when he observed a blue Suzuki Aerio ("the vehicle" or "the rental car") carrying four African-American males, including Defendant Massey, driving out of a known high-crime area. Officer Rush stopped the vehicle and approached the driver.

The driver, Tony Robinson ("Robinson"), produced documentation that the vehicle was a rental car taken out in his aunt's name. On Robinson's offer, Officer Rush had him exit the rental car and escorted him back to the patrol car to call his aunt concerning his authority to drive the

vehicle. At no time did Officer Rush note an odor of marijuana, despite talking to Robinson through the car's open window and standing alongside as Robinson fully opened the door to exit the vehicle.

While Robinson was calling his aunt, Officer Rush noticed Massey seated in the rear passenger side of the car, turning his head occasionally to see what was going on at the police car behind him. Based on this alone, Officer Rush re-approached the vehicle. He spoke to Massey briefly, and ultimately removed Massey from the car and arrested him, in part, he claimed, because he smelled marijuana. A search of the vehicle found a gun and some marijuana on the floorboard where Massey had been sitting. After Massey was taken to the police station, crack cocaine was found in the patrol car that had carried him.

**II. DISCUSSION**

A passenger in a car has standing to challenge a traffic stop due to the seizure of his person inherent in the stop[1]. United States v. Rusher, 966 F.2d 868, 875 fn.4 (4th Cir. 1992). Traffic stops, even where conducted to issue a citation, are governed under the rubric of Terry v. Ohio. 392 U.S. 1 (1968); Berkemer v. McCarty, 468 U.S. 420, 439 (1984). Under Terry, an officer must be able to point to "specific and articulable facts" creating a suspicion of criminal activity that "reasonably

---

[1] Though no published case in this circuit is directly on point, it appears that Massey would not have standing to challenge the *search* of the vehicle as he did not have a possessory interest in the vehicle itself; he may only challenge the initial stop. It is clear that passengers cannot challenge a search if they "assert neither a property nor possessory interest in the automobile, nor an interest in the property seized." Rakas v. Illinois, 439 U.S. 128, 148 (1978). Even where an interest in the property seized is actually asserted, the current trend seems to be to deny standing. See United States v. Fahnbulleh, 748 F.2d 473 (8th Cir. 1984) (holding that a passenger cannot challenge the search of the trunk of a car in which he was riding, even though he claimed ownership of the drugs found within).

Because the Court holds the initial stop to be invalid, it is unnecessary to apply these principles here. The Court notes, however, the potential conflict between this line of cases and the Supreme Court's decision in Bond v. United States, which held that a passenger in a public bus did have a legitimate expectation of privacy in a backpack he placed in the storage bin over his head. 529 U.S. 334 (2000). It would be an odd result indeed to afford a greater expectation of privacy to a passenger on a public bus than to a passenger in a private car.

warrant[s]" a stop. 392 U.S. at 21. When determining if the officer's suspicion was "reasonable," a court must take the totality of the circumstances into account. United States v. Cortez, 449 U.S. 411, 417-18 (1981). Under current law, a traffic stop may be purely a pretext for an officer to investigate suspicions that would not themselves meet constitutional standards justifying a stop. See, e.g., United States. v. Foreman, 369 F.3d 776, 787 fn.3 (4th Cir. 2004) (Gregory, C.J., concurring in part and dissenting in part) (holding a stop may be upheld even where the officer admits it was purely pretextual). The officer's subjective motivation in making the stop is unimportant; it only matters whether the basis for the stop was "objectively reasonable." Whren v. United States, 517 U.S. 806, 813 (1996), see also United States v. Hassan El, 5 F.3d 726 (4th Cir. 1993) (rejecting "pretextual stop" defense so long as the Government can show that the officer had the objective right to stop the vehicle).

The only evidence before the Court as to why Officer Rush stopped the rental car is the officer's own testimony. Thus, the Court must make a credibility determination as to whether or not that testimony is believable. The Court is unwilling to make a favorable credibility assessment, and rejects Officer Rush's statements concerning the cause for the stop. In concluding that no objectively reasonable basis existed for conducting the stop, the Court takes into account first Officer Rush's general credibility as demonstrated by the consistency of his testimony, and second, Officer Rush's proclaimed use of a prohibited technique to determine the vehicle's speed.

### A) General credibility of Officer Rush's testimony

In assessing the veracity of Officer Rush's testimony, the Court first looks to his general credibility as a witness. Though the Magistrate found Officer Rush to be credible, the Court's own observations and analysis of his testimony showed a number of inconsistencies and questionable behaviors, perhaps most notably the remarkable enhancement in his sense of smell between talking

to Robinson and Massey. Taken together, these show Officer Rush to be an unreliable witness whose testimony on any particular area must be given close scrutiny.

Officer Rush testified that he did not smell marijuana at any time while he was talking to Robinson through the driver's window or when Robinson opened the door to exit the vehicle. He then testified that he "immediately" smelled marijuana on his re-approach to the vehicle, as soon as Massey rolled down his window. This Court has heard numerous times from numerous officers about the powerful and unique smell of marijuana. It simply defies belief that Officer Rush could not smell even the slightest hint of marijuana earlier, despite the entire car door being open to him at one point, yet instantly picked up the odor as soon as Massey's window rolled down. Officer Rush confirmed that he was not closer to the car on his re-approach than he had been initially, and the video made at the scene confirms this. Unless the remaining passengers undertook to smoke marijuana with a police officer standing directly behind them detaining the car's driver, Officer Rush's testimony cannot be believed.

This is not the only example of inconsistency, simply the most egregious. Before the Magistrate, for example, Officer Rush testified that he was a 9-1-1 responder at the time with no proactive duty to enforce any traffic laws. Before this Court, he testified that he *was* a proactive officer who would actively seek out traffic offenses when not responding to 9-1-1 calls. Further inconsistencies emerged concerning the use of pacing, discussed below. Based on all of this, the Court cannot help but conclude that Officer Rush's testimony is unreliable and any assertion that depends on his credibility alone must be closely examined.

**B) Credibility of Officer Rush's testimony concerning the cause for the traffic stop**

Having found Officer Rush's testimony in this hearing to be generally unreliable, the Court must examine his testimony on the cause of the stop closely to determine if an objective basis for

the stop truly existed. Officer Rush testified that he determined the rental car was speeding solely by "pacing." The Court finds this unlikely as Officer Rush did not know how to accurately conduct the pacing technique and as pacing is prohibited by CMPD regulations due to unreliability.

Pacing is a technique whereby an officer maintains a constant distance between his patrol car and the target car over a certain period of time and uses his speedometer to determine the speed that both cars are traveling. The accuracy of this technique is completely dependant on the proper calibration of the officer's speedometer. Officer Rush testified that he had no idea whether or not his speedometer was accurate at the time of the stop, when it might have been calibrated, or even if CMPD speedometers are ever recalibrated once they leave the factory. Further, his testimony displayed an ignorance of the mechanics of pacing, such as the distance to be maintained between cars and the time to be allowed for an accurate reading. As he did not know how to actually employ the technique or if it could have been accurate, it is difficult to believe that he could have used it on the night in question.

More doubt is cast by the fact that CMPD has a policy actively restricting officers from pacing vehicles. At the January 23 hearing, both sides introduced evidence before this Court concerning the existence of CMPD regulations on the pacing procedure. Defendant presented Dr. L. D. Williams, a recently retired Police Sergeant with 28 years of experience as a CMPD officer, including approximately eight years working in Internal Affairs. Dr. Williams is also a Master of Divinity and a Doctor of Ministries. Dr. Williams testified that CMPD has a strict policy against pacing as a form of speed detection, and that knowledge of and obedience to this policy are mandatory for all officers. The Government, by way of rebuttal, produced Sergeant Jeffrey Pless, a current member of CMPD Internal Affairs Bureau. Sergeant Pless testified that no such policy existed, and that in fact, there is actually a specific check-box on a traffic citation to note whether

pacing was conducted. On further questioning, Sergeant Pless revised this statement to say that there was no check-box, but that officers sometimes write a letter beside the noted speed indicating that pacing was performed. His testimony also revealed that he did not know whether department speedometers would be properly calibrated to allow an accurate pacing determination that would justify a stop.

As the Government and the Defendant have introduced two witnesses making incompatible assertions of fact, and in the absence of any other evidence, the Court is called on here to make a credibility determination. As much as the Court would prefer to avoid an adverse credibility determination as to a current CMPD officers, the Court finds Dr. Williams to be by far the more credible witness. Thus, we conclude that CMPD has a mandatory policy against its officers performing traffic stops based on pacing alone. Officer Rush denied knowledge of this policy. The Court finds this denial unpersuasive and irrelevant, as Officer Rush had a proactive duty to be familiar with CMPD regulations. Officer Rush's testimony, then, is that he engaged in pacing despite being under a duty not to do so and despite personal ignorance of how to employ the technique. The Court rejects this explanation. As pacing formed the only asserted grounds for the stop, the stop cannot be said to be based on any objectively reasonable suspicion.[2]

---

[2] The Court is aware that since the time of the hearing, the Government has obtained a further affidavit in support of its position. The Court notes, however, that the Government had plenty of notice, including a hearing before the Magistrate and a second hearing before this Court, that it should prepare all issues, including the propriety of pacing, for the suppression hearing. The Government is not allowed to prolong trial of the issue by waiting to see the deficiencies in its case and then supplementing them factually once a ruling has been made against it. The Court must rule on the evidence presented at the time of trial, and a post-decision affidavit cannot correct the deficiencies in that evidence.

Even if the Court were to accept the Government's affidavit, it would not change the Court's ruling. All available evidence from both sides supports the conclusion that CMPD does not calibrate its speedometers regularly, as would be required for a pacing stop to be admissible in Court. The Court finds it highly unlikely that CMPD would allow its officers to engage in a practice that necessarily could not result in conviction. Further, even if CMPD policy has

## III. CONCLUSION

Taken together, the circumstances of the stop, including the general inconsistencies in Officer Rush's testimony and the specific inconsistencies concerning the purported use of pacing, lead the Court to believe that Officer Rush's testimony as to why the stop was made is, at best, unreliable. The Court finds that Officer Rush did not actually believe the rental car to be speeding, but instead stopped it on suspicions more likely originating from the presence of four black males in a high-crime area after midnight. Officer Rush almost certainly stopped the rental car based solely on suspicions unrelated to those later articulated, then fabricated a speeding violation to justify his actions. This clearly fails the standard of objective reasonableness required by Whren. 517 U.S. at 813. Thus, the initial traffic stop was invalid.

When evidence would not have been recovered but for a constitutional violation, that evidence must be suppressed under the Fruit of the Poisonous Tree doctrine. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392 (1920). It is difficult to dispute that all the evidence recovered against Massey flowed directly from the initial unconstitutional stop. Without the stop, Officer Rush would never have detained Massey, would never have seen Massey glancing back at him, would never have re-approached the car, and would never have found the evidence at issue here. As such, all evidence stemming from the unconstitutional traffic stop must be suppressed.

**IT IS THEREFORE ORDERED** that the Magistrate's Memorandum and Recommendations are rejected, and Defendant's Motion to Suppress is **GRANTED**.

---

changed since March, 2005, when Dr. Williams worked in Internal Affairs, the Court would still conclude, based on the rest of the evidence before it, that Officer Rush's testimony is unreliable as to the reasons for the stop.

Signed: May 22, 2006

Graham C. Mullen
United States District Judge